UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IONICS, INCORPORATED,<br>Plaintiff<br><br>v.<br><br>GLOBAL ENERGY, INC.,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 04-11943-PBS<br>)<br>)<br>)<br>)<br>) |

### **PLAINTIFF IONICS, INCORPORATED'S REVISED MEMORANDUM IN LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

This Court should allow Plaintiff Ionics, Incorporated's ("Ionics") motion for summary judgment because it is undisputed (1) that Defendant Global Energy, Inc. ("Global") entered into a guaranty agreement with Ionics; (2) that Global is liable for debt owed to Ionics pursuant to the guaranty agreement; and (3) Global breached the guaranty agreement with Ionics.

### **UNDISPUTED MATERIAL FACTS**

A. <u>Wabash River Energy, Ltd., a Wholly Owned Subsidiary of Global, Defaulted on Debt it Owed Ionics for Services Provided and Goods Delivered</u>

In September 2000, Ionics and Wabash River Energy, Ltd. ("WRE"), a wholly-owned subsidiary of Global, entered into a contract ("the Contract") for Ionics to provide WRE with certain water purification equipment (the "equipment") and technical services. Affidavit of Gary Podrabsky (hereinafter "Podrabsky Affidavit"), ¶2, Exhibit A. The Contract required WRE to pay Ionics an agreed-upon price for the equipment and services in portions upon the completion of contractual milestones. Id., ¶2, Exhibit A. The delivery of the water purification equipment and technical services took place over time during 2000 and 2001. Id., ¶3. Ionics provided the

BOS1417880.1

equipment and services in full compliance with the Contract with WRE. Id. WRE has paid only a portion of the contract price, and the total outstanding debt plus applicable interest under the contract is $2,218,548.04. Supplemental Affidavit of Gary Podrabsky, ¶2.

B.    <u>Global Entered into a Guaranty Agreement with Ionics and Breached the Guaranty</u>

On March 4, 2003, Global, in consideration for Ionics' forbearance from taking immediate legal action against WRE, its wholly-owned subsidiary, entered into the Guaranty with Ionics. Podrabsky Affidavit, ¶5, Exhibit B. Under the Guaranty Global "unconditionally and irrevocably agree[d] to pay Ionics the outstanding indebtedness owed by WRE to Ionics. . . in the amount of $1,979,278. . . [plus] interest at the annual rate of 12%. . . on or before June 30, 2004, if such payment is not made to Ionics by WRE prior to that date." Id., Exhibit B, ¶1. As of June 30, 2004, WRE had not paid Ionics the balance of the contract price or accrued interest. Id., ¶7. By letter dated June 30, 2004, Ionics demanded payment from Global pursuant to the Guaranty. Id., ¶8, Exhibit C. Ionics has not received payment of the outstanding debt and accrued interest pursuant to the Guaranty. Podrabsky Affidavit, ¶8. As of August 31, 2004, the total debt plus applicable interest owed is $2,218,548.04. Supplemental Affidavit of Gary Podrabsky, ¶2.

## ARGUMENT

**As a Matter of Law, Pursuant to the Guaranty, Global owes Ionics $2,218,548.04 for the Outstanding Balance plus Accrued Interest Due on Ionics' Contract with WRE, its Wholly Owned Subsidiary.**

Ionics is entitled to judgment as a matter of law that Global owes Ionics the outstanding balance plus accrued interest on Ionics' contract with WRE, Global's wholly owned subsidiary because the express terms of the Guaranty requires such. When the terms of a contract are clear,

the contract must be enforced according to its terms. See <u>Schwanbeck v. Federal-Mogul Corp.</u> 412 Mass. 703, 706 (1992) (Exhibit 1).[1] The Guaranty, dated March 4, 2003, expressly states that Global "unconditionally and irrevocably agrees to pay Ionics the outstanding indebtedness owed by WRE to Ionics, currently in the amount of $1,979,278, as said amount may be augmented by the accrual of interest at the annual rate of 12%. . . on or before June 30, 2004, if such payment is not made to Ionics by WRE prior to that date." <u>Podrabsky Affidavit</u>, Exhibit B, ¶1.

There is no dispute that Ionics performed in full under the Contract with WRE. The Guaranty itself establishes that the debt existed on March 4, 2003. It is also undisputed that (1) that WRE did not pay the outstanding debt on the Contract on or before June 30, 2004; (2) that Global guaranteed payment of the outstanding debt and accrued interest after June 30, 2004; and (3) that by letter dated June 30, 2004, Ionics demanded payment from Global pursuant to the Guaranty. Global is liable for the debt owed by WRE to Ionics because it unconditionally guaranteed the debt. See <u>Cotter & Company v. Phil-Am Hardware Store, Inc.</u>, 1996 Mass. Super. LEXIS 351, *4 (June 1, 1996) (summary judgment granted for plaintiff when defendant, by agreement, unconditionally guaranteed debt to plaintiff arising out of a contract for goods sold and delivered) (Exhibit 2); see also <u>John B. Dreary, Inc. v. Crane</u>, 4 Mass. App. Ct. 719, 722 (1976) (granting summary judgment when defendants executed a guaranty of obligations under a note and mortgage) (Exhibit 3).

## Conclusion

For the foregoing reasons, Ionics requests that its motion for summary judgment be allowed and that the Court:

---

[1] The Guaranty contains a clause wherein Global agrees that "[t]his Guaranty shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts." See <u>PodrabskyAffidavit</u>, Exhibit B, ¶7.

(i) grant Ionics' Motion for Summary Judgment;

(ii) enter judgment in favor of Ionics for Count I of the complaint in the amount of $2,218,548.04 for the unpaid outstanding debt and accrued interest pursuant to the Guaranty and as provided by law; and

(iii) grant Ionics such further relief as it finds just or appropriate.

Dated: September 20, 2004

IONICS, INCORPORATED.

By its Attorneys,

*/s/ Kim M. Clarke*

David B. Mack (BBO# 631108)
Kim M. Clarke (BBO# 657711)
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110
(617) 345-1000

1

Case 1:04-cv-11943-PBS    Document 11    Filed 09/20/2004    Page 5 of 17

LEXSEE 412 MASS 703

JOHN R. SCHWANBECK v. FEDERAL-MOGUL CORPORATION & another n1

n1 Vellumoid, Inc.

[NO NUMBER IN ORIGINAL]

Supreme Judicial Court of Massachusetts, Suffolk

412 Mass. 703; 592 N.E.2d 1289; 1992 Mass. LEXIS 286

February 3, 1992 May 27, 1992

**PRIOR HISTORY:** [***1]

CIVIL ACTION commenced in the Superior Court Department on September 2, 1981.

The case was heard by *Cortland A. Mathers*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

**DISPOSITION:**

*So ordered.*

LexisNexis(R) Headnotes

**HEADNOTES:**

*Contract,* What constitutes, Offer and acceptance. *Frauds, Statute of.*

**SYLLABUS:**

In negotiations between a prospective buyer and the seller of the assets of a business, language in a letter of intent subscribed by the parties, expressing an intention "to proceed in good faith in the negotiation of [a] binding definitive agreement," did not bind the parties contractually. [705-707]

A draft agreement for purchase and sale of real and personal property constituting the assets of a business, which had been initialled on behalf of the seller and the buyer but which left unstated the value and attributes of certain preferred stock that was contemplated as part of an undifferentiated purchase price, was insufficient to satisfy the Statute of Frauds and thus did not constitute an "enforceable offer" for purposes of a right of first refusal held by a different prospective buyer with whom the seller had been negotiating previously. [707-710]

**COUNSEL:** [***2]

*John M. Harrington, Jr. (John C. Bartenstein* with him) for the plaintiff.

*Michael P. Angelini (Vincent F. O'Rourke, Jr., & Barry A. Bachrach* with him) for Vellumoid, Inc.

*Samuel Adams (Ralph T. Lepore, III,* with him) for Federal-Mogul Corporation.

**JUDGES:**

Nolan, Lynch, O'Connor, & Greaney, JJ.

**OPINIONBY:**

NOLAN

**OPINION:**

[*704] [**1290] This action arises out of failed negotiations between the plaintiff and the defendant, Federal-Mogul Corp., for the purchase and sale of Federal-Mogul's Vellumoid Division (division), which Federal-Mogul eventually sold to another party (buyer), who organized a new corporation, the defendant Vellumoid, Inc. The plaintiff alleged in his complaint

Case 1:04-cv-11943-PBS    Document 11    Filed 09/20/2004    Page 7 of 17

Page 2

412 Mass. 703, *; 592 N.E.2d 1289, **;
1992 Mass. LEXIS 286, ***

that Federal-Mogul breached an agreement to negotiate in good faith with the plaintiff and to honor the plaintiff's right of first refusal; defrauded the plaintiff; and violated G. L. c. 93A, § 11 (1990 ed.). The plaintiff alleged that the buyer tortiously interfered with the plaintiff's contractual and advantageous business relationship with Federal-Mogul, [**1291] and also violated G. L. c. 93A, § 11 (1990 ed.).

Following a jury-waived trial, bifurcated as to liability and damages, the trial judge issued [***3] extensive findings and rulings in the plaintiff's favor. The judge awarded the plaintiff approximately $ 10,200,000 in damages for his "lost opportunity" to own the division; double damages under G. L. c. 93A; interest in the amount of approximately $ 9,600,000; and attorney's fees of approximately $ 2,500,000. The total damages amounted to over $ 32,500,000.

Both defendants appealed, and the plaintiff cross appealed from "all rulings, orders and decisions adverse to his interests." The Appeals Court reversed the judgment and remanded the action to the Superior Court. *Schwanbeck v. Federal-Mogul Corp., 31 Mass. App. Ct. 390, 417 (1991).* The Appeals Court held that: (1) an obligation to negotiate in good faith means that neither party may enter into the preliminary agreement for some ulterior purpose, and that Federal-Mogul satisfied this obligation, *id. at 396-405;* (2) a draft agreement entered into between Federal-Mogul and the buyer did not constitute an enforceable offer which triggered the plaintiff's right of first refusal, *id. at 406;* (3) certain misrepresentations made by Federal-Mogul [***4] to the plaintiff were not actionable because the plaintiff did not rely on them to his detriment, *id. at 410-412;* (4) two other misrepresentations by Federal-Mogul to the plaintiff were actionable under both common law fraud and G. L. c. 93A, *id. at 411-412,* [*705] *415-416;* (5) the facts found by the judge did not warrant the conclusion that the buyer had tortiously interfered with the plaintiff's relationship with Federal-Mogul, *id. at 412-413;* and (6) with the exception of the two misrepresentations by Federal-Mogul, neither Federal-Mogul nor the buyer engaged in unfair or deceptive acts in violation of *G. L. c. 93A, § 11, id. at 413-416.* The Appeals Court, in reversing the judgment, remanded the case for consideration of damages and attorney's fees allocable to Federal-Mogul's two misrepresentations and the damages which flowed therefrom. *Id. at 417.*

This court granted the plaintiff's application for further appellate review. After a careful review of the record and arguments of counsel, we conclude that, while we agree [***5] with the Appeals Court's result, we do have some significant differences with that court's reasoning. We remand this case for consideration of damages and attorney's fees in accordance with the Appeals Court's decision. We also respond briefly to those areas of the Appeals Court's opinion with which we disagree without repeating the facts which are generously set forth in that opinion.

1. *The obligation to negotiate in good faith.* Both the trial judge and the Appeals Court concluded that the stated intention of the plaintiff and Federal-Mogul "to proceed in good faith in the negotiation of . . . a binding definitive agreement" constituted a contractual obligation in spite of the parties' preceding disclaimer. n2 *31 Mass. App. Ct. at 396.* [**1292] The [*706] courts differed, however, on whether Federal-Mogul violated this alleged duty to negotiate in good faith. We believe, however, that it is not necessary to determine what constitutes an obligation to negotiate in good faith or whether Federal-Mogul breached any such obligation, because we conclude that the parties did not bind themselves contractually to any such obligation.

---

n2 The relevant portions of the parties' letter of intent are as follows: "Of course, this letter is not intended to create, nor do you or we presently have any binding legal obligation whatever in any way relating to such sale and purchase other than (i) with respect to the cost of appraisers and the review of OSHA compliance and repairs to remedy flooding . . . and (ii) those arising from the Confidentiality Agreement . . . . No further obligation will arise until a definitive agreement is reduced to writing and executed by you, the New Corporation and us and then only to the extent provided for and subject to the terms and conditions (e.g., approval of our Board of Directors) which may be set forth therein.

"However, it is our intention, and, we understand, your intention immediately to proceed in good faith in the negotiation of such binding definitive agreement. . . .

"No public or private announcement to the employees of the [division] or others shall be made without our prior consent. A mutually agreed upon public announcement of the proposed transaction will, however, be made not later than the signing of the definitive agreement.

"It has been agreed that we are under no moral or legal obligation to refrain from negotiating the sale of the [division] with others until the definitive agreement has been executed. However, should any firm offer to purchase such business be made to us by a third party before December 1, 1980, you will have a right of first refusal to purchase such business on the same

412 Mass. 703, *; 592 N.E.2d 1289, **;
1992 Mass. LEXIS 286, ***

Page 3

terms and conditions contained in such offer. Such right shall be exercisable by you by delivery to us of written notice of such exercise on or before the 15th day following our delivery to you of a writing setting forth such terms and conditions."

The parties later extended the right of first refusal to January 15, 1981.

[***6]

It is a settled principle of contract law that "[a] promise made with an understood intention that it is not to be legally binding, but only expressive of a present intention, is not a contract." *Kuzmeskus v. Pickup Motor Co.*, 330 Mass. 490, 493 (1953). *Phoenix Spring Beverage Co. v. Harvard Brewing Co.*, 312 Mass. 501, 506 (1942). *Wellington v. Apthorp*, 145 Mass. 69, 74 (1887). It is also elementary that an unambiguous agreement must be enforced according to its terms. *Freelander v. G. & K. Realty Corp.*, 357 Mass. 512, 516 (1970). There is no ambiguity in the letter of intent between the plaintiff and Federal-Mogul. The parties clearly stated certain contractual commitments to which they were binding themselves and, just as clearly, they followed those commitments with an expression of their intention to proceed to negotiate in good faith. That this expression of intent follows the parties' disclaimer of binding effect and begins with the [*707] word "however" does not elevate its status from a mere expression of intent into a binding [***7] obligation. n3

> n3 We note that the contractual commitments in the letter of intent incorporated a binding covenant of good faith and fair dealing. See *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 473 (1991), and cases cited.

2. *The right of first refusal.* Both the trial judge and the Appeals Court also concluded that Federal-Mogul was contractually bound to recognize that the plaintiff had a right of first refusal. 31 Mass. App. Ct. at 406. In contrast to the parties' written statement concerning good faith negotiations, Federal-Mogul's promise concerning the plaintiff's right of first refusal was far more than a mere expression of intention, see note 2, *supra*, and therefore we agree with the conclusion of the lower courts. The trial judge found that Federal-Mogul violated that duty, by failing to give the plaintiff an opportunity to purchase the division on the same terms as were set out in a January 8, 1981, draft memorandum initialled [***8] by Federal-Mogul and the buyer, because, concluded the trial judge, that memorandum constituted a firm offer. n4

> n4 The judge concluded that this memorandum constituted not only a firm offer but also a contract. The Appeals Court characterized the question on appeal as whether the memorandum constituted an "enforceable offer" or an "enforceable contract." *Schwanbeck v. Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 406 (1991). The plaintiff contends on appeal that a firm offer requires something less than that envisioned by the Appeals Court. The parties themselves did not define what they meant by a "firm offer," and this term is used frequently only in the Uniform Commercial Code, see G. L. c. 106, § 2-205 (1990 ed.), which is inapplicable to the present case. In the absence of any contractual definition, we conclude that a "firm offer" in these circumstances is an offer that, were it not for the plaintiff's right of first refusal, would be enforceable on Federal-Mogul's manifestation of acceptance of the terms of the offer. Cf. *Roy v. George W. Greene, Inc.*, 404 Mass. 67, 69-71 (1989).

[***9]

The Appeals Court, reversing the judge, concluded that the memorandum did not constitute a firm offer "because it contained a major hole pertaining to how the buyer would pay the purchase price, and the amount of that price, itself, was unresolved." *Schwanbeck v. Federal-Mogul Corp.*, 31 Mass. App. Ct. at 406. The Appeals Court reasoned that the memorandum was deficient with regard to the price because: [*708] (1) the memorandum did not specify which of Federal-Mogul's [**1293] liabilities would be assumed by the buyer or the value of whatever liabilities the buyer would assume; (2) various economic terms within the memorandum varied from the terms of the agreement that Federal-Mogul and the buyer executed on February 2, 1981; and (3) neither the value nor the attributes of the preferred stock, which was contemplated as part of the purchase price, were addressed by the memorandum. *Schwanbeck v. Federal-Mogul Corp.*, 31 Mass. App. Ct. at 407-409. Once again, we agree with the Appeals Court's result although we disagree with that court's reasoning.

The first two reasons offered by the Appeals Court do not support [***10] a conclusion that the buyer did not make a firm offer to Federal-Mogul on January 8, 1981. Under the terms of the memorandum, whatever liabilities the plaintiff would have assumed from Federal-Mogul were to be deducted from the purchase price. The liabilities, therefore, would have had no net economic effect on the purchase price and their indefinite value did

Case 1:04-cv-11943-PBS   Document 11   Filed 09/20/2004   Page 9 of 17

412 Mass. 703, *; 592 N.E.2d 1289, **;
1992 Mass. LEXIS 286, ***

Page 4

not affect the memorandum's status as a firm offer. Similarly, because the parties were free to modify the terms of the memorandum, that they did so does not mean that the initial memorandum was not a firm offer. See *Beach & Clarridge Co. v. American Steam Gauge & Valve Mfg. Co., 202 Mass. 177, 182 (1909)*.

The memorandum's provision that the price was to include an undisclosed amount of stock at an undetermined value with unspecified attributes, however, standing alone, would have made the memorandum too indefinite to constitute a firm offer. n5 See *Simons v. American Dry Ginger Ale Co., 335 Mass. 521, 523 (1957)*. The judge found and the plaintiff contends, however, that any deficiencies in the memorandum were corrected by extrinsic evidence, specifically [***11] the parties' [*709] notes and oral testimony, which established that the parties had arrived at a price of $ 300,000 for the preferred stock and that the basic features of the stock had been worked out. The Appeals Court, however, without explanation, did not consider the extrinsic evidence and concluded that whether the memorandum was enforceable was a question of law rather than fact. *Schwanbeck v. Federal-Mogul Corp., 31 Mass. App. Ct. at 406*. The plaintiff asserts, in response to the Appeals Court's position, that, when evidence is of a mixed character, testimonial and documentary as was the situation in the present case, the fact finder's determination is subject to the more deferential, "clearly erroneous" standard of review. See *Bresky v. Rosenberg, 256 Mass. 66, 75 (1926)* (if evidence of contract consists of more than writings, question is for jury); *Gel Sys. Inc. v. Hyundai Eng'g & Constr. Co., 902 F.2d 1024, 1027 (1st Cir. 1990)* (where trial judge relied on written agreement and extrinsic evidence, findings would be set aside only if clearly erroneous).

---

n5 The memorandum stated: "The Purchaser shall deliver a certificate or certificates for - - - shares of its Preferred Stock (the "Preferred Stock"), which Preferred Stock shall have the attributes described in Exhibit Three to this Agreement." There was, at that time, no Exhibit Three to the memorandum.

---

[***12]

While we agree with the Appeals Court that whether the memorandum was a firm offer is a question of law, that conclusion requires some explanation in response to the plaintiff's persuasive arguments to the contrary. We have held previously that a person with a right of first refusal cannot exercise that right until "the owner has received a bona fide and enforceable (written) offer from a third party." *Roy v. George W. Greene, Inc., 404 Mass. 67, 70 (1989)*. Unarticulated in *Roy*, although critical to its reasoning, is the fact that the dispute in that case concerned an interest in land, a right of first refusal to purchase an automobile repair shop. See *id. at 67-68*. Any promise involving real property is enforceable only if that promise meets the requirements of the Statute of Frauds, G. L. c. 259, § 1 (1990 ed.). As in *Roy*, the dispute in this case concerns both real and personal property, and, because the offer did not differentiate between the [**1294] interest in land and the interest in personal property, the entire agreement fell within the Statute of Frauds. See *First Nat'l Bank v. Fairhaven Amusement Co., 347 Mass. 243, 245 (1964)*. [***13]

[*710] In order for Federal-Mogul to have had an enforceable offer from the buyer that would have satisfied the Statute of Frauds, Federal-Mogul would have had to prove not only an agreement, but also "a memorandum in writing containing the terms of that [agreement] in so far as [Federal-Mogul] seeks to enforce them." *Fichera v. Lawrence, 312 Mass. 287, 288 (1942)*. See *Bouvier v. L'Eveque, 324 Mass. 476, 478 (1949)*. "The price of a parcel of land is undoubtedly an essential element of a contract for its sale." *Shayeb v. Holland, 321 Mass. 429, 432 (1947)*. We are of opinion, therefore, that the price offered by the buyer for the division was an essential element that Federal-Mogul would have had to prove by a writing in order to enforce the buyer's offer. We are satisfied that the price was too indefinite because of the undetermined value of the preferred stock in the written memorandum.

The judge's findings about the value of the preferred stock, since it was not contained in the written memorandum, would have had to have been based on extrinsic evidence. That the parties [***14] had written notes and conversations about the preferred stock is irrelevant because the offer, involving the sale of land, was clearly within the Statute of Frauds. We conclude, therefore, as a matter of law, that Federal-Mogul had no firm offer from the buyer prior to the expiration of the plaintiff's right of first refusal on January 15, 1981.

3. *Other issues.* Our conclusion, in accordance with the result reached by the Appeals Court, that Federal-Mogul did not breach any obligation to negotiate in good faith or the plaintiff's right of first refusal, similarly leads us to support the Appeals Court's determinations that Federal-Mogul's conduct did not require Federal-Mogul to negotiate past the expiration of the plaintiff's right of first refusal; that, with two exceptions, Federal-Mogul did not commit common law fraud; that the buyer did not tortiously interfere with the plaintiff's contractual and advantageous relationship with Federal-Mogul; and that, with the exception of Federal-Mogul's two misrepresentations, neither Federal-Mogul nor the buyer

412 Mass. 703, *; 592 N.E.2d 1289, **;
1992 Mass. LEXIS 286, ***

Page 5

engaged in any unfair or deceptive acts in violation of [*711] G. L. c. 93A. Consequently, there is no need to consider [***15] the plaintiff's argument on appeal concerning the judge's award of damages.

The judgment is reversed and the case is remanded for consideration of damages and attorney's fees in accordance with the opinion of the Appeals Court.

*So ordered.*

LEXSEE 1996 MASS SUPER LEXIS 351

Cotter & Company v. Phil-Am Hardware Store, Inc. dba Phil-Am True Value Hardware et al. n1

n1 Jose P. Santos.

9400223

SUPERIOR COURT OF MASSACHUSETTS, AT NORFOLK

*1996 Mass. Super. LEXIS 351*

June 1, 1996, Decided

**DISPOSITION:** [*1] Plaintiff's renewed motion for summary judgment is ALLOWED.

**LexisNexis(R) Headnotes**

**OPINION:** MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT

Plaintiff Cotter & Company brought an action against the defendants, Phil-Am Hardware Store, Inc. dba Phil-Am True Value Hardware and Jose P. Santos, for default on the terms of an installment note and monies owed for goods sold and delivered in connection with a True Value Retailer Member Agreement. The plaintiff renewed its motion for summary judgment arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter law.

Defendant Phil-Am was defaulted for failure to file an answer in this action. Defendant Santos opposes plaintiff's motion on several grounds. Santos asserts that there are genuine issues of material facts and summary judgment is therefore inappropriate as a matter of law. Defendant Santos further asserts that the plaintiff's motion is barred by the doctrine of res judicata. For the reasons discussed below, plaintiff's renewed motion for summary judgment is allowed.

DISCUSSION

In February of 1990, defendant Phil-Am entered into a True Value Retailer Member Agreement [*2] with the plaintiff. Simultaneously, defendant Santos, president of Phil-Am, entered into an unconditional guaranty agreement with the plaintiff. The guaranty agreement was executed by defendant Santos in his individual capacity absolutely guarantying all of the indebtedness, past, present, or future, of defendant Phil-Am to the plaintiff. In July of 1991, defendant Santos executed an installment note with the plaintiff and reaffirmed his personal guaranty of defendant Phil-Am's indebtedness to the plaintiff. The defendants have defaulted on the terms of the installment note for $ 27,826.02. Defendant Phil-Am and defendant Santos, by virtue of his personal guaranty, owe the plaintiff $ 25,064.60 for goods sold and delivered.

Plaintiff, originally, moved for summary judgment and was denied on June 21, 1995. The plaintiff than amended its complaint to include the unconditional guarantee agreement. With that, the plaintiff renewed its motion for summary judgment.

Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Cassesso v. Commissioner of Correction*, 390 Mass. 419, 422, 456 N.E.2d 1123 [*3] (1983); *Community National Bank v. Dawes*, 369 Mass. 550, 553, 340 N.E.2d 877 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the moving party is entitled to judgment as a matter of law. *Pederson v. Time, Inc.*, 404 Mass. 14, 16-17, 532 N.E.2d 1211 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by

submitting affirmative evidence that negates an essential element of the opponent's case or "by demonstrating that proof that element is unlikely to be forthcoming at trial." *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 809, 575 N.E.2d 1107 (1991); accord, *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 716, 575 N.E.2d 734 (1991). "If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of material fact in order to defeat the motion." *Pederson, supra*, 404 Mass. at 17.

The plaintiff has established the absence of a triable [*4] issue. Defendant Santos in his opposition has failed to allege specific facts establishing the existence of triable issues. *See Id.* Further, I conclude that the plaintiff is entitled to judgment as a matter of law.

The plaintiff is entitled to damages from defendant Santos on the basis of the unconditional guaranty agreement. Defendant Santos is liable to the plaintiff for the obligations which arose out the goods sold and delivered and the installment note. *See G.L.c. 106, 3-416.* The defendant argues that a triable issue exists, in that, he denies by affidavit that he signed the unconditional guaranty agreement. However, in his deposition, the defendant unequivocally admitted that he signed the guaranty agreement. This Court will disregard defendant's disingenuous affidavit, because "a party cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at a deposition." *O'Brien v. Analog Devices, Inc.*, 34 Mass. App. Ct. 905, 906, 606 N.E.2d 937 (1993).

Defendant Santos goes as far as to argue in his opposition that "the Defendant, Jose P. Santos, was never involved with an entity called Phil-Am Hardware [*5] Supply Co., Inc. (Affidavit of Jose P. Santos, Paragraph 12) for whose debt he is allegedly the Guarantor." This, by his own admissions, is simply not true. While in one paragraph of his affidavit the defendant makes the aforementioned statement regarding his lack of involvement, the defendant, in the same affidavit, states that he provided the financial investment for Phil-Am. Further, the defendant admits in his deposition that he is an officer of said corporation. The defendant's involvement, as the guarantor, is clear and unmistakable.

Additionally, defendant Santos argues that triable issues exist with regards to the execution of the installment note. The defendant maintains both in his deposition and affidavit that the signature on the installment note is a forgery. The defendant contends that by challenging the authenticity of his signature summary judgment is inappropriate. *See G.L.c. 106, 3-401(1)* ("No person is liable on an instrument unless his signature appears thereon"). However, as the official comment to *G.L.c. 106, 3-401(1)* states, "nothing in this section is intended to prevent any liability arising apart from the instrument itself. The party who does not [*6] sign may still be liable on the original obligation for which the instrument was given. . . . He may of course be liable under any writing." *FDIC v. Csongor*, 391 Mass. 737, 741, 464 N.E.2d 942 (1984) (quoting U.C.C. 3-401 cmt. 1 (1977)). The defendant is liable under the unconditional guaranty agreement, notwithstanding, the genuineness of the signature on the installment note.

Finally, defendant Santos makes the meritless argument that plaintiff's renewed motion for summary judgment is precluded by the doctrine of res judicata. There can be no dispute that the denial of a motion for summary judgment is not a final judgment, an essential element to res judicata. *See Heacock v. Heacock*, 402 Mass. 21, 23-25, 520 N.E.2d 151 (1988). A judgment was never entered for the defendant and the issue of the unconditional guaranty agreement was never litigated in the original summary judgment motion. *See Id.*

ORDER

For the foregoing reasons, the plaintiff's renewed motion for summary judgment is ALLOWED.

3

LEXSEE 4 MASS APP CT 719

John B. Deary, Inc. v. Paul A. Crane, individually and as trustee, & another n1

n1 Although the ancillary note and the guaranty were signed by Jones, Crane and Gordon, service was not secured on Jones, and consequently he was not a defendant in this action.

[NO NUMBER IN ORIGINAL]

Appeals Court of Massachusetts, Suffolk

*4 Mass. App. Ct. 719; 358 N.E.2d 456; 1976 Mass. App. LEXIS 797*

November 9, 1976, Argued
December 24, 1976, Decided

**PRIOR HISTORY:** [***1]

Contract. Writ in the Superior Court dated April 10, 1974.

The case was heard by *Morse*, J., on a motion for summary judgment.

The case was submitted on briefs.

**DISPOSITION:**

*Judgment affirmed.*

**LexisNexis(R) Headnotes**

**HEADNOTES:**

*Practice, Civil*, Summary judgment.

**SYLLABUS:**

Where an affidavit in opposition to a motion for summary judgment raised merely vague and general allegations of expected proof, there was no error in the allowance of the motion. [722-724]

**COUNSEL:**

*Morris M. Goldings* for the defendants.

*Joseph F. Ryan* for the plaintiff.

**JUDGES:**

Hale, C.J., Grant, & Brown, JJ.

**OPINIONBY:**

HALE

**OPINION:**

[*720] [**457] The principal issue here concerns the correctness of an order of a Superior Court judge granting the plaintiff's motion for summary judgment as to the defendants under *Mass.R.Civ.P. 56, 365 Mass. 824 (1974)*.

On December 1, 1972, Jones and Crane, as trustees of Jones-Crane Trust, executed a promissory note, secured by a mortgage, in the amount of $ 32,405.49 payable to the plaintiff, John B. Deary, Inc., a Massachusetts corporation, on or before December 1, 1972. On the same date the defendants and Jones individually executed a separate promissory note jointly and severally promising [***2] to pay interest on the unpaid principal balance on the Jones-Crane Trust note at the rate of ten per cent per annum together with all costs of collection, including reasonable attorneys' fees.

On December 21, 1972, Gordon, Jones and Crane individually executed a "guaranty" by which they jointly and severally unconditionally guaranteed faithful performance and observance by Jones and Crane as

4 Mass. App. Ct. 719, *; 358 N.E.2d 456, **;
1976 Mass. App. LEXIS 797, ***

trustees of the Jones-Crane Trust of all obligations under the Jones-Crane Trust note and mortgage. Nothing was paid on the notes when due, nor was any sum paid under the guaranty.

We summarize the subsequent events from the pleadings, where undisputed, and from the affidavits filed in connection with the plaintiff's motion for summary judgment. On December 4, 1973, the plaintiff sent demand notices on the Jones-Crane Trust note and on the Gordon-Jones-Crane note and sent notice of default on the Gordon-Jones-Crane guaranty. Notice of the foreclosure sale was sent on February 6, 1974, by certified mail to the mortgagors Jones, Crane, and the Jones-Crane Trust, and it [*721] was published on February 11, 18, and 25, 1974, in the Laconia Evening Citizen, a newspaper published in Laconia, [***3] Belknap County, New Hampshire, which was the locus of the premises subject to [**458] sale. The foreclosure sale took place by public auction at the place appointed on March 13, 1974, with the plaintiff's bid of $ 3,750 being the highest bid for the mortgaged premises. Thereafter on April 5, 1974, the plaintiff recorded an affidavit of sale under the power of sale in the mortgage, together with a foreclosure deed conveying the mortgaged premises to itself.

On April 10, 1974, the plaintiff brought an action to recover a deficiency of $ 28,655.49 allegedly due on the $ 32,405.49 note from its makers, Crane and Jones, trustees of the Jones-Crane Trust, to recover the amount of that deficiency from the guarantors of the note, Gordon, Jones, and Crane, and to recover from them the amount due under the interest note.

The defendant Crane, individually and as trustee for the Jones-Crane Trust, and the defendant Gordon answered the plaintiff's declaration, admitting the execution of the notes and guaranty and the nonpayment of same when due. By their answers the defendants proffered the following defenses: (1) the notice given on December 4, 1973, was insufficient notice of default [***4] and demand to hold the defendants liable for any deficiency upon foreclosure; and (2) the debt to the plaintiff was liquidated by a purchase of the premises on a bid of $ 32,405 and, therefore, that the defendants owe nothing to the plaintiff. n2

> n2 Since neither of these defenses is argued in the brief as a reason why the motion for summary judgment should have been allowed, we treat them as waived.

On October 11, 1974, the plaintiff moved for summary judgment against the defendant Crane, individually and as trustee of the Jones-Crane Trust, and the defendant Gordon. The motion was supported by affidavits. By way of an affidavit in opposition to the plaintiff's motion Crane and Gordon alleged the failure of the plaintiff to have the notice of the sale published in conformity with N.H. Rev. [*722] Stat. Ann. § 479:25 (1968) n3 or the failure to include such publication, if in fact made, in the documents recorded at the registry in conformity with N.H. Rev. Stat. Ann. § 479:26 (1968). The defendants' [***5] affidavit did not contradict the averments in the plaintiff's affidavit that the property had been sold for $ 3,750, or that notices of default had been given.

> n3 This averment is not argued on appeal and is deemed waived. The missing information was supplied in the plaintiff's revised affidavit.

Thereafter, the plaintiff's motion for summary judgment was allowed, and Crane and Gordon have appealed from the judgment. There was no error.

The granting of summary judgment will be upheld "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass.R.Civ.P. 56(c), *365 Mass. 824 (1974)*. This rule also provides a basis for determining the moving party's burden, which is to show that there is no genuine issue of material fact and that he is entitled, as a matter of law, to a judgment. *Community Natl. Bank v. Dawes* [***6] , *369 Mass. 550, 553 (1976)*. See Moore, Federal Practice par. 56.15[3] (2d ed. 1976). If the moving party fails to show that there is no genuine issue of material fact, then his motion will be denied. However, if the moving party does show that there is no such issue for trial, the party in opposition to the motion must allege specific facts which establish a triable issue in order to avoid entry of summary judgment against him. Allocating the burden discourages "utterly unjustified summary judgment motions" and "sham claims and defenses." Wright & Miller, Federal Practice and Procedure, § 2712, at 382-384 (1973).

On the basis of its declaration and its affidavit in support of its motion for summary judgment, the plaintiff met its burden of showing that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law. Therefore, the sole question which remains [**459] is [*723] whether the affidavit submitted on behalf of Gordon and Crane in opposition to that motion presented a genuine issue of material fact.

4 Mass. App. Ct. 719, *; 358 N.E.2d 456, **;
1976 Mass. App. LEXIS 797, ***

The defendants contend that a triable issue was raised by their affidavit, which averred the failure of the plaintiff to comply [***7] with the provisions of *N.H. Rev. Stat. Ann. § 479:26.* n4 That statute requires, among other things, that the affidavit of sale set forth "fully and particularly" the acts of the person selling pursuant to the power of sale and that it, or a duly certified copy, be recorded in the appropriate registry of deeds within thirty days of the sale. The defendant maintains that the plaintiff failed to meet its burden under rule 56(c) because the affidavit did not fully set forth the details and circumstances of the sale. There is no merit to that contention.

n4 *New Hampshire Rev. Stat. Ann. § 479:26* (1968) provides: "The person selling pursuant to the power shall within thirty days after the sale, cause the foreclosure deed, a copy of the notice of the sale, and his affidavit setting forth fully and particularly his acts in the premises, to be recorded in the registry of deeds in the county where the property is situated; and such affidavit, or a duly certified copy of the record thereof, shall be evidence on the question whether the power of sale was duly executed."

[***8]

The plaintiff's "Affidavit of Sale Under Power of Sale in Mortgage" included a copy of the notice of the foreclosure sale, the foreclosure deed and an affidavit. The latter stated that a copy of the notice of sale had been published once a week for three successive weeks in a Laconia newspaper; that copies of the notice had been sent by certified mail to the defendants; and that at the time and place appointed in the notice the mortgaged premises were sold at public auction to the plaintiff for $3,750, that being the highest bid made at the auction.

We are of the opinion that that affidavit complied with the requirements of *N.H. Rev. Stat. Ann. § 479:26* (1968).

The defendant's bald assertion that a section was omitted from the affidavit recorded at the registry of deeds is insufficient to establish a genuine issue of material fact. He does not point out what is missing other than to say, "[c]learly, there is a section missing, probably to be found [*724] on page 251 of Book 630 of Belknap County, Registry of Deeds, New Hampshire."

The Supreme Judicial Court has held firmly to the principle that "well pleaded cases and motions for summary judgment supported by affidavits [***9] and other materials serve a 'salutary purpose' which should not be 'set at naught' where the opposing party merely raises 'vague and general allegations of expected proof.'" *Community Natl. Bank v. Dawes, 369 Mass. at 555-556.*

We have called for the original record and have examined the "Affidavit of Sale under Power of Sale in Mortgage" appended to the plaintiff's revised affidavit. That document bears the teste of the Belknap County registrar of deeds that it is a true copy. It appears to us that no page is missing from the document and that it is complete in every detail. We conclude that the allowance of the motion for summary judgment was correct.

The defendants now attempt to raise a question of good faith on the part of the plaintiff-mortgagee as purchaser at the foreclosure sale. As no such issue was raised in the defendants' pleadings or in their affidavit, and as no indication appears in the record of the question's having been raised below, the defendants are precluded from presenting it for the first time on appeal. *Milton v. Civil Serv. Commn. 365 Mass. 368, 379 (1974).*

*Judgment affirmed.*