UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IONICS, INCORPORATED, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 04-11943-PBS |
| GLOBAL ENERGY, INC., | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, DEFENDANT'S RULE 56(f) <u>APPLICATION FOR A CONTINUANCE TO RESPOND</u>**

**Introduction**

Defendant Global Energy, Inc. ("Global Energy") hereby opposes the summary judgment motion filed by Plaintiff Ionics Incorporated ("Ionics"). As noted in the accompanying affidavit and documents presented herewith, there are material facts in dispute concerning Global Energy's obligations under the Guaranty. Moreover, because there has been *absolutely no discovery* in this case, it is premature for this Court to rule on summary judgment. To the extent that summary judgment might be appropriate, for either party, it can only be after there has been reasonable discovery on the relevant issues. The intended effect of Ionics' premature motion is to send Global Energy into a gunfight armed only with a knife.[1]

There is no reason why this Court should allow Ionics' hasty pursuit of relief. There would be no unfair prejudice by allowing some minimal time for discovery. This is a contract matter. To the extent that there are damages, interest will accrue. There is no claim of

---

[1] Initially, Ionics would not even agree to give Global Energy more than fourteen (14) days to respond to the pending motion. Global Energy had to seek leave of Court for a reasonable extension of time.

irreparable harm.  Moreover, the parties have already agreed to a condensed discovery schedule in their L.R. 16.1 Joint Statement to the Court.  Fact discovery will end no later than March 31, 2005.  Waiting a mere few months for Global Energy to conduct a modicum of discovery will not prejudice Ionics in the slightest.  In contrast, compelling Global Energy to respond to Ionics' motion, with absolutely *zero* discovery, would be grossly unfair and unduly prejudicial to Global Energy.[2]

### Disputed Material Facts

Global Energy denies many of the so-called undisputed material facts put forth by Ionics.  On the contrary, as set forth in its Response to Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts, Global Energy proffers that there are several material facts in dispute that preclude summary judgment at this time.

1.     Ionics asserts that Wabash River Energy, Ltd. ("Wabash"), a wholly-owned subsidiary of Global Energy, entered into the Contract with Ionics and that Ionics contracted to provide equipment to Wabash.  Those statements are not true.  Even a cursory review of the Contract attached as Exhibit A to the Affidavit of Gary Podrabsky shows that the Contract is between Wabash and Resources Conservation Company ("RCC"), not Ionics.  Global Energy also denies that Ionics was to provide any equipment to Wabash under the Contract and further denies that the Contract required Wabash to pay Ionics, as opposed to RCC, for any such equipment.[3]

2.     Ionics asserts as undisputed the delivery of equipment by Ionics in 2000 and 2001 pursuant to the Contract.  First, Global Energy again denies that Ionics was a party to the

---

[2] Counsel for Global Energy, Jason W. Morgan, sought documents from Ionics through an informal request.  Ionics refused to produce any documents to Global Energy.

[3] The Contract identifies RCC as a "division" of Ionics; however, it is not clear why Ionics, in its moving papers, glosses over the fact that RCC, and not Ionics, was the party to the Contract.

Contract. To the extent that equipment was delivered to Wabash pursuant to the Contract, it was delivered by RCC, not Ionics. Second, because this case is at its inception, with no discovery having taken place, Global Energy has been unable to confirm the dates of delivery of equipment to Wabash during 2000 and 2001.

3. Global Energy admits that, as of March 4, 2003, Wabash owed in excess of $1.9 million under the Contract. However, as this case is at its inception, with no discovery having taken place, Global Energy has been unable to confirm the exact amount currently owed by Wabash under the Contract.

4. Global Energy denies that Ionics has presented the full scope and nature of the Guaranty, which specifically calls for the parties to convert the "Guaranteed Obligation" into preferred equity capital of Wabash in conjunction with an "Alliance Agreement." The Contract specifically states that the Guaranty at issue would be superseded. Global Energy and RCC were working in good faith toward a final Alliance Agreement when Ionics, in bad faith and without justification, forced RCC to abruptly cease further negotiation of the proposed Alliance Agreement. (See Affidavit of Harry H. Graves ("Graves Aff.") at ¶¶ 5-11.)

5. Global Energy admits that Wabash had not paid some portion of the outstanding debt as of June 30, 2004. Global Energy denies, however, that the parties anticipated that the outstanding debt would be paid on June 30, 2004, because RCC and Global Energy were, at the time, working in good faith towards the Alliance Agreement called for under the Guaranty. Ionics, in bad faith and without justification, forced RCC to abruptly cease further negotiations with Global Energy. (Graves Aff. at ¶¶ 5-11.)

**Argument**

The instant summary judgment motion could be denied for two independent reasons. First, there has been *zero* discovery. As such, this case is ripe for a finding under Fed. R. Civ. P. 56(f) that the instant motion cannot be heard until Global Energy has been given the benefit of at least some minimal discovery. Second, even based on the limited facts developed to date, it is clear that there is a dispute between the parties concerning the import of the Alliance Agreement contemplated by the Guaranty and the effect of the negotiations and discussions concerning that agreement on the parties' rights and obligations under the Guaranty.

A. Summary Judgment Standard.

As noted repeatedly by this Court, summary judgment is appropriate under Fed. R. Civ. P. 56 "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Datatrend, Inc. v. Jabil Circuit, Inc., 3 F. Supp. 2d 66, 70 (D. Mass. 1998); O'Connell Mgmt. Co. v. Carlyle-XIII Mgrs., Inc., 765 F. Supp. 779, 782 (D. Mass. 1991). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Only after the moving party satisfies that burden does the party opposing summary judgment bear the burden of responding. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986); see also O'Connell Mgmt., 765 F. Supp at 782.

A dispute about a material fact is a "genuine issue" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. In essence, the inquiry is whether a jury question is presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986); see also O'Connell Mgmt., 765 F. Supp. At 782.

On summary judgment, all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922,

928 (1st Cir. 1983); Mack v. Great Atlantic & Pacific Tea Co., 871 F.2d 179, 181 (1st Cir. 1989); O'Connell Mgmt., 765 F. Supp. at 782.

      B.  <u>A ruling on summary judgment should be deferred, pursuant to Rule 56(f), because this case is at the inception stage, with *no* discovery having been conducted.</u>

As part of this opposition, Global Energy moves for a continuance of the pending summary judgment motion in order to obtain discovery, pursuant to Rule 56(f). This Court should defer ruling on the present motion because Global Energy has not "received a full and fair chance to discover relevant information in the hands" of Ionics. Carmona v. Toledo, 215 F.3d 124, 133-34 (1st Cir. 2000); see also Patterson-Leitch v. Massachusetts Elec., 840 F.2d 985, 988 (1st Cir. 1988) (court has discretion to withhold summary judgment if the party opposing it has not had an opportunity to conduct discovery). The First Circuit recently cautioned against courts ruling on summary judgment before the opposing party has been afforded a fair opportunity to conduct discovery, noting that

> trial courts should refrain from entertaining summary judgment motions until after the parties have had a sufficient opportunity to conduct necessary discovery. … [T]he opposing party must be afforded a fair chance to obtain and synthesize available information before being required to file an opposition.

Velez v. Awning Windows, Inc., 375 F.3d 35, 39 (1st Cir. 2004). It thus follows that any summary judgment motion filed before discovery has begun must be viewed with a fair degree of skepticism.

Rule 56(f) allows a party opposing summary judgment to defer judgment by demonstrating "an authentic need for, and an entitlement to, an additional interval in which to marshal facts essential to mount an opposition." Morrissey v. Boston Five Cents Savings Bank, 54 F.3d 27, 35 (1st Cir. 1995); see also Resolution Trust Co. v. North Bridge Assocs., 22 F.3d 1198, 1203 (1st Cir. 1994). The rule prevents a party from being "railroaded by a premature

motion for summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The First Circuit has recognized the "salutary purposes" of Rule 56(f), indicating that the rule "is intended to safeguard against judges swinging the summary judgment axe too hastily." Resolution Trust, 22 F.3d at 1203; see also . Therefore, the Court "should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than it its letter." Id.

Here, there has been *absolutely no discovery*. There have been no automatic disclosures, no interrogatories, no document request, and no depositions. The parties have not even met for a pretrial scheduling conference. Simply put, nothing has happened on this case except the filing of a complaint and an answer, followed immediately by the instant summary judgment motion. While Global Energy believes that even the limited available facts demonstrate a material issue of fact that precludes summary judgment (see infra), to the extent that the Court disagrees, Global Energy should not be forced to oppose summary judgment without the benefit of at least some discovery.

Global Energy recognizes that it must make a sufficient proffer under Rule 56(f). The proffer "should be authoritative; it should be advanced in a timely manner; and it should explain why the party is unable currently to adduce the facts essential to opposing summary judgment." Resolution Trust, 22 F.3d at 1203. As demonstrated below, Global Energy has satisfied its burden.

**Authoritativeness**

Global Energy formally requests a continuance pursuant to Rule 56(f). That request is supported by the affidavits of its counsel, Jason Morgan, and of its president and CEO, Harry Graves. Those affidavits demonstrate why the limited documents available to Global Energy in this pre-discovery stage of the proceeding are insufficient to allow Global Energy properly to

defend itself. It is axiomatic that permitting discovery will allow Global Energy to better respond to the relevant aspects of the summary judgment motion.

### Timeliness

There can be no question that Global Energy's Rule 56(f) request is timely. "[A] party must invoke Rule 56(f) within a reasonable time following a motion for summary judgment." Resolution Trust, 22 F.3d at 1204, 1205 (three months is not "outside the realm of reasonableness"). Here, Global Energy requested, and the Court granted, a limited extension of time for Global Energy to respond to the summary judgment motion. In its motion for an extension, Global Energy referenced that it likely would invoke Rule 56(f). Because the parties were working toward a possible out-of-court settlement, they stipulated to two more brief extensions.

Moreover, there has been *absolutely no discovery* to date. As noted by this Court in a prior case, that fact is compelling on the timeliness factor. See Commonwealth Aluminum Corp. v. Markowitz, 164 F.R.D. 117, 120-21 (D. Mass. 1995); see also Resolution Trust, 22 F.3d at 1205 (discovery was "due and owing"); Morrissey, 54 F.3d at 35 (defendant under an order to produce documents). The Court in Commonwealth Aluminum also noted that "the summary judgment rule emphasizes the need for a developed factual record prior to a court's decision." 164 F.R.D. at 121 n.5. Where, as here, there is virtually nothing in the way of a factual record, summary judgment is premature.

### Good Cause, Utility, and Materiality

Similarly, there can be no question that Global Energy has shown good cause in pursuing a continuance. As indicated herein, Global Energy has both attempted to respond to the substantive arguments while at the same time emphasizing that discovery – even a limited

amount – will enable them to mount a more compelling defense. See Commonwealth Aluminum, 164 F.R.D. at121.

Global Energy has requested that Ionics withdraw its motion to allow for at least some minimal discovery into the parties' negotiations of the Alliance Agreement.[4] Ionics' understanding of the effect of the Alliance Agreement negotiations, particularly as they pertain to complying with the June 30, 2004 date in the Guaranty, is central to Global Energy's defense. Global Energy requested that Ionics provide its internal communications regarding the Alliance Agreement and related negotiations to determine whether Ionics itself agreed with Global Energy that the date in the Guaranty had been obviated by the negotiations over the Alliance Agreement. Ionics has refused. Query why Ionics would refuse to provide those documents if it truly had nothing to hide.

Global Energy has demonstrated "a plausible basis for a belief that discoverable materials exist that would likely suffice to raise a genuine issue of material fact and, thus, defeat summary judgment." Resolution Trust, 22 F.3d at 1206. This proffer – which is not subject to the "more harrowing evidentiary standard" of Rules 56(c) and 56(e) (Id.) – articulates several specific areas of discovery that are relevant to the instant motion, particularly as to the effect of the Alliance Agreement on the parties' rights and obligations.

The facts that Global Energy seeks to discover are "foreseeably capable" of defeating a motion for summary judgment. Resolution Trust, 22 F.3d at 1207. "Evaluating the potential significance of unknown facts in regard to unadjudicated issues is something of a metaphysical exercise. Consequently, the threshold of materiality at this stage of a case is necessarily low." Id. "If, at this stage of the proceedings, a lack of materiality is not apparent, then an inquiring

---

[4] In an effort to minimize the delay of discovery, Global Energy proposed, and Ionics has agreed to, an extremely tight discovery schedule to accomplish some limited discovery. (Graves Aff. ¶ 13).

court should err, if at all, on the side of liberality." Id. at 1208; see also Paterson-Leitch, 840 F.2d at 988. Therefore, even if the Court has questions about the strength of Global Energy's defense, it should defer ruling on the motion until there has been discovery.

      C.  <u>The limited available evidence demonstrates material factual issues that cannot be resolved on summary judgment at this stage of the case</u>.

While there is not much in the way of a record at this early stage of the proceeding, the limited information available demonstrates that there are material fact issues that need to be determined by a trier of fact. Those material fact issues preclude summary judgment.

Global Energy contends that Ionics has breached the Guaranty and the related covenant of good faith and fair dealing implicit in the Guaranty, by halting the efforts of RCC and Global Energy to finalize the Alliance Agreement (an agreement that was specifically contemplated by the express terms of the Guaranty). Paragraph 8 of the Guaranty states, in relevant part that "Ionics and Global have agreed to work together to convert the Guaranteed Obligation into preferred equity capital of WRE in conjunction with an alliance agreement between the parties." The parties had made significant progress toward that end.

Even before the Guaranty was executed, Global Energy and RCC had entered into a Confidential Disclosure Agreement that would allow Global Energy to share confidential information to be used in negotiating the terms of the Alliance Agreement. (Graves Aff. at ¶ 7). Indeed, the parties had agreed upon most of the fundamental terms of the Alliance Agreement. The primary holdup was the additional time needed to move a power plant project forward that would support a "Power Purchase Agreement" called for by the Alliance Agreement. The project, referred to as "Wabash GT," would provide up to $1 million in cash flow to retire any RCC balance during the 2005/2006 timeframe. In addition, the Alliance Agreement would provide up to $20 million in sales revenue for the RCC ZLD (Zero Liquid Discharge) system.

- 9 -

(Graves Aff. ¶ 8). As late as June 1, 2004, Global Energy and RCC were continuing to negotiate an Alliance Agreement and were even discussing alternative ways to produce cash for RCC. (Graves Aff. ¶ 9).

It is well settled that an uncured, material breach by one party to a contract excuses the other party from further performance under the contract. Petrangelo v. Pollard, 356 Mass. 696, 701-02 (1970); see also O'Connell Mgmt., 765 F. Supp. at 783. The issue of whether a party has substantially complied with the terms of an agreement or whether the actions of a party constitute a material breach is a question of fact, not a question of law. Cetrone v. Paul Livoli, Inc., 337 Mass. 607, 610 (1958); O'Connell Mgmt., 765 F. Supp. at 783. Whether a breach is material is determined by the circumstances of each case. Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 200 (1973); O'Connell Mgmt., 765 F. Supp. at 783. Whether a party to a contract adequately cured a breach depends on the facts and circumstances of the case, making it a question of fact for the jury. Shane v. Winter Hill Fed. Sav. & Loan Assoc., 397 Mass. 479, 482-83 (1986); O'Connell Mgmt., 765 F. Supp. at 784.

Here, Global Energy has provided sufficient factual support for its contention that Ionics breached the Guaranty and the implied covenant of good faith and fair dealing. Such breach would excuse compliance with the June 30, 2004 date in the Guaranty.

Global Energy also contends that Ionics is precluded from seeking summary judgment at this time under the doctrines of waiver and estoppel. By forcing RCC to cease its good faith negotiations with Global Energy, exactly on June 30, 2004, with *no notice* to Global Energy, Ionics is estopped from enforcing, or has waived its right to enforce, the June 30,2004 date in the Guaranty. Global Energy relied upon the apparent good faith efforts of RCC in negotiating the Alliance Agreement; it now appears that it did so to its detriment. Whether evidence tending to

support an estoppel is sufficient to prove it is ordinarily a question of fact.  <u>Simon v. Simon</u>, 35 Mass. App. Ct. 705, 712 (1994).  The same is true for issues of waiver.  <u>Doujotos v. Leventhal</u>, 271 Mass. 280 (1930); <u>Commins v. Sharkansky</u>, 38 Mass App. Ct. 37, 43 (1995).

WHEREFORE, for the foregoing reasons, Global Energy hereby requests that the Court deny the pending motion summary judgment, or, in the alternative, that the Court grant Global Energy's request for a continuance under Rule 56(f).  Given the feckless nature of its motion at this early stage of the case, and its complete unwillingness to produce any documents to Global Energy on the issues raised in this opposition, Global Energy further requests that it be awarded its attorneys' fees and costs in having to prepare this opposition.

Respectfully submitted,

/s/     Jason W. Morgan
Jason W. Morgan (BBO #633802)
Drohan, Hughes, Hoffman & Tocchio, P.C.
175 Derby Street, Suite 30
Hingham, MA  02043
Tel.:  (781) 749-7200
Fax:  (781) 740-4335
jmorgan@dhhpc.com

Dated: November 16, 2004                           *Counsel for Global Energy, Inc.*

### CERTIFICATE OF SERVICE

I, Jason W. Morgan, hereby certify that on November 16, 2004, I served a true and correct copy of the foregoing by regular mail upon counsel for Plaintiff, Kim M. Clarke, Nixon Peabody LLP, 100 Summer Street, Boston, Massachusetts 02110.

/s/     Jason W. Morgan
Jason W. Morgan