UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IONICS, INCORPORATED, | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )     Civil Action No. 04-11943-PBS <br> ) |
| GLOBAL ENERGY, INC., | ) <br> ) |
| Defendant. | ) <br> ) |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' LOCAL RULE 56.1
STATEMENT OF UNDISPUTED MATERIAL FACTS AND SUPPLEMENTAL
STATEMENT OF UNDISPUTED FACTS**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, Defendant Global Energy, Inc. ("Global Energy") responds to Plaintiff's Statement of Undisputed Material Facts and provides a Supplemental Statement of Facts, as follows:

**Response to Plaintiffs' Statement of Undisputed Facts**

1. <u>Denied</u>. Global Energy denies that Wabash River Energy, Ltd. ("Wabash") entered into the Contract with Plaintiff Ionics, Incorporated ("Ionics"). Even a cursory review of the Contract attached as Exhibit A to the Affidavit of Gary Podrabsky shows that the Contract is between Wabash and Resources Conservation Company ("RCC"). Global Energy also denies that Ionics was to provide any equipment to Wabash under the Contract and further denies that the Contract required Wabash to pay Ionics, as opposed to RCC, for any such equipment.[1]

2. <u>Denied</u>. Global Energy denies that Ionics was a party to the Contract. To the extent that equipment was delivered to Wabash pursuant to the Contract, it was delivered by

---

[1] The Contract identifies RCC as a "division" of Ionics; however, it is not clear why Ionics, in its moving papers, glosses over the fact that RCC, and not Ionics, was the party to the Contract.

RCC, not Ionics. This case is at its inception, with no discovery having taken place. As such, Global Energy has been unable to confirm the dates of delivery of equipment to Wabash during 2000 and 2001.

3.  <u>Admitted in part; unknown in part</u>. Global Energy admits that, as of March 4, 2003, Wabash owed in excess of $1.9 million under the Contract. This case is at its inception, with no discovery having taken place. As such, Global Energy has been unable to confirm the exact amount currently owed by Wabash under the Contract.

4.  <u>Admitted in relevant part</u>. Global Energy admits that, on March 4, 2003, it entered into a Guaranty with Ionics in consideration of a forbearance of suit against Wabash. The Guaranty speaks for itself.

5.  <u>Admitted in part; denied in part</u>. Global Energy admits that it agreed to pay the outstanding indebtedness owed by Wabash, then $1,979,278, plus accrued interest, if Wabash did not make payment by June 30, 2004. Global Energy denies, however, that Ionics has presented the full scope and nature of the Guaranty, which specifically calls for the parties to convert the "Guaranteed Obligation" into preferred equity capital of Wabash in conjunction with an "Alliance Agreement," and that the Guaranty at issue would be superseded. Global Energy and RCC were working in good faith toward a final Alliance Agreement when Ionics, in bad faith and without justification, forced RCC to abruptly cease further negotiation of the proposed Alliance Agreement. (<u>See</u> Affidavit of Harry H. Graves ("Graves Aff.") ¶¶ 5-11.)

6.  <u>Admitted in part; denied in part</u>. Global Energy admits that Wabash had not paid some portion of the outstanding debt as of June 30, 2004. Global Energy denies, however, that the parties anticipated that the outstanding debt would be paid on June 30, 2004, because RCC and Global Energy were, at the time, working in good faith towards the Alliance Agreement

called for under the Guaranty. Ionics, in bad faith and without justification, forced RCC to abruptly cease further negotiation of the proposed Alliance Agreement. (Graves Aff. ¶¶ 5-11.)

7.    <u>Admitted</u>. Global Energy admits that Ionics sent the June 30, 2004 letter. The letter speaks for itself.

8.    <u>Admitted in part; denied in part</u>. Global Energy admits that it has not paid the outstanding debt or accrued interest. As noted above, the parties did not anticipate that the outstanding debt would be paid on June 30, 2004, because RCC and Global Energy were, at the time, working in good faith towards the Alliance Agreement called for under the Guaranty. Ionics, in bad faith and without justification, forced RCC to abruptly cease further negotiation of the proposed Alliance Agreement. (Graves Aff. ¶¶ 5-11.)

### Defendants' Supplemental Statement of Undisputed Facts

9.    On March 4, 2003, Global Energy entered into a Guaranty with Ionics in consideration of a forbearance of suit against Wabash.

10.    The Guaranty specifically calls for the parties to convert the "Guaranteed Obligation" into preferred equity capital of Wabash in conjunction with an "Alliance Agreement," and that the Guaranty at issue would be superseded.

11.    Even before the Guaranty was executed, Global Energy and RCC had entered into a Confidential Disclosure Agreement that would allow Global Energy to share confidential information to be used in negotiating the terms of the Alliance Agreement. (<u>See</u> Graves Aff. ¶ 7, and **Exhibit 1** thereto).

12.    The parties had agreed upon most of the fundamental terms of the Alliance Agreement. The primary holdup was the additional time to move a power plant project forward

that would support a "Power Purchase Agreement" that was called for by the Alliance Agreement.  (<u>See</u> Graves Aff. ¶ 8.)

13.    Indeed, as late as June 1, 2004, Global Energy and RCC were continuing to negotiate an Alliance Agreement and were discussing alternative ways to produce cash for RCC. (<u>See</u> Graves Aff. ¶ 9, and **Exhibit 2** thereto).

14.    Global Energy was shocked when it was served with the Complaint in this matter. Global Energy believed that the parties had agreed to continue working toward a resolution to pay the outstanding balance that would not require an immediate up front payment of the entire balance, but rather would provide Global Energy with a reasonable amount of time to pay off the outstanding amount, as contemplated by the Alliance Agreement.  (<u>See</u> Graves Aff. ¶ 10.)

15.    At no time prior to June 30, 2004 did RCC or Ionics give any indication that the plan to negotiate an acceptable Alliance Agreement, as contemplated by the Guaranty, was off the table.  (<u>See</u> Graves Aff. ¶ 11).

16.    The parties have already agreed to an aggressive discovery schedule.  Under the parties Local Rule 16.1(D) Joint Statement, the parties have agree to the following:

- 11/23/04:     Deadline for Rule 26(a)(1) Initial Disclosures
- 01/01/05:     Deadline for service of all written discovery
- 02/15/05:     Deadline for service of discovery responses and production of documents
- 03/31/04:     Deadline for completion of all depositions

This schedule will allow for not much more than one month to serve written discovery, with responses and documents due a month and a half later.  Depositions must then be completed a month and half later.

17.     Allowing Global Energy a few months of discovery at this early stage of the litigation will cause no undue prejudice to Ionics.  Interest continues to accrue on any outstanding amount due under the Guaranty, and there is no claim of irreparable harm to any party.

                            Respectfully submitted,

                            /s/     Jason W. Morgan
                            Jason W. Morgan (BBO #633802)
                            Drohan, Hughes, Hoffman & Tocchio, P.C.
                            175 Derby Street, Suite 30
                            Hingham, MA  02043
                            Tel.:  (781) 749-7200
                            Fax:  (781) 740-4335
                            jmorgan@dhhpc.com

Dated: November 16, 2004            *Counsel for Global Energy, Inc.*

## CERTIFICATE OF SERVICE

I, Jason W. Morgan, hereby certify that on November 16, 2004, I served a true and correct copy of the foregoing by regular mail upon counsel for Plaintiff, Kim M. Clarke, Nixon Peabody LLP, 100 Summer Street, Boston, Massachusetts 02110.

                            /s/     Jason W. Morgan
                            Jason W. Morgan