UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IONICS INCORPORATED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04-11943-PBS |
| GLOBAL ENERGY, INC., | ) ) ) | |
| Defendant. | ) ) | |

## AFFIDAVIT OF HARRY H. GRAVES

I, Harry H. Graves, do hereby depose and state as follows:

1.　I am the President and CEO of Defendant Global Energy, Inc. ("Global Energy"). Unless otherwise noted, the statements in this affidavit are based on my personal knowledge and/or on documents from my files.

2.　I have attempted to locate all of my files related to the Contract between Wabash River Energy, Ltd. ("Wabash") and Resources Conservation Company ("RCC"). I also have attempted to locate all of my files related to the Guaranty between Global Energy and Plaintiff Ionics, Incorporated ("Ionics"), including my files and notes regarding the Alliance Agreement called for under the Guaranty. I have been unable to locate all of my files because we recently moved office locations and those files have not yet been unpacked.

3.　My understanding is that Ionics is not a party to the Contract between Wabash and RCC. As such, it is my also my understanding that Ionics did not provide any equipment to Wabash under the Contract; RCC provided any such equipment.[1]

---

[1] The Contract identifies RCC as a "division" of Ionics; however, RCC, and not Ionics, was the party to the Contract.

4.I have been unable to find files or records that would confirm the dates of delivery of equipment alleged by Ionics in its summary judgment papers.

5.The Guaranty, which I signed on behalf of Global Energy, specifically calls for the parties to convert the "Guaranteed Obligation" into preferred equity capital of Wabash in conjunction with an "Alliance Agreement," and states that the Guaranty at issue would be superseded. Global Energy and RCC were working in good faith toward a final Alliance Agreement when Ionics, in bad faith and without justification, forced RCC to abruptly cease further negotiation of the proposed Alliance Agreement.

6.Global Energy admits that Wabash had not paid some portion of the outstanding debt as of June 30, 2004. Global Energy denies, however, that the parties anticipated that the outstanding debt would be paid on June 30, 2004, because RCC and Global Energy were, at the time, working in good faith towards the Alliance Agreement called for under the Guaranty. Ionics, in bad faith and without justification, forced RCC to abruptly cease further negotiation of the proposed Alliance Agreement.

7.Even before the Guaranty was executed, Global Energy and RCC had entered into a Confidential Disclosure Agreement that would allow Global Energy to share confidential information to be used in negotiating the terms of the Alliance Agreement. (See **Exhibit 1**).

8.Indeed, the parties had agreed upon most of the fundamental terms of the Alliance Agreement. The primary holdup was the additional time needed to move a power plant project forward that would support a "Power Purchase Agreement" called for by the Alliance Agreement. The project, referred to as "Wabash GT," would provide up to $1 million in cash flow to retire any RCC balance during the 2005/2006 timeframe. In addition, the Alliance Agreement would provide up to $20 million in sales revenue for the RCC ZLD (Zero Liquid

Discharge) system. These valuable Preferred Equity and Alliance Agreement rights were in effect discarded by Ionics when it abruptly insisted upon a cash-now approach.

9. Indeed, as late as June 1, 2004, Global Energy and RCC were continuing to negotiate an Alliance Agreement and were discussing alternative ways to produce cash for RCC. (See **Exhibit 2**).

10. I was shocked when I was served with the Complaint in this matter. We believed that the parties were continuing to work in good faith toward a resolution to pay the outstanding balance that would not require an immediate up front payment of the entire balance, but rather would provide Global Energy with a reasonable amount of time to pay off the outstanding amount, as contemplated by the proposed Alliance Agreement.

11. At no time prior to June 30, 2004 did RCC or Ionics give any indication that the plan to negotiate an acceptable Alliance Agreement, as contemplated by the Guaranty, was off the table.

12. This case is at its inception, with no discovery having taken place. Global Energy requires at least some minimal discovery – limited document requests and a handful of depositions – (1) to confirm the exact amount currently owed by Wabash under the Contract, (2) to confirm whether RCC agrees that the parties had not viewed the June 30, 2004 dates as a drop-dead date, because they were continuing to negotiate an Alliance Agreement, as called for under the Guaranty, or a credit facility that would be acceptable to RCC.

13. So as not to cause any undue delay, on behalf of Global Energy, I have agreed to a very aggressive discovery schedule, as follows:

- 11/23/04: Deadline for Rule 26(a)(1) Initial Disclosures
- 01/01/05: Deadline for service of all written discovery

- 02/15/05: Deadline for service of discovery responses and production of documents
- 03/31/04: Deadline for completion of all depositions

14. Allowing Global Energy a few months of discovery at this early stage of the litigation should cause no undue prejudice to Ionics. Interest continues to accrue on any outstanding amount due under the Guaranty, and there is no possibility of irreparable harm to any party.

Signed this 16th day of November 2004 under the pains and penalties of perjury.

                               /s/ Harry H. Graves  
                               Harry H. Graves